PEOPLE ex rel. LEET v. KELLER.

(Supreme Court, Appellate Division, First Department. June 28, 1898.)

GREATER NEW YORK CHARTER—CIVIL SERVICE.

    The provisions of "Greater New York Charter" (Laws 1897, c. 378) relating to the civil service of the new city operated to establish a special local system, and to take the city out of the operation of the general civil service law, and were not repealed or affected by Laws 1898, c. 186, amending the general law.

Appeal from special term.

Application by the people, on the relation of George E. Leet, against John W. Keller, commissioner of public charities. From an order denying a peremptory writ, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and O'BRIEN, JJ.

Julius M. Mayer, for appellant.
Theodore Connoly, for respondent.

O'BRIEN, J. The relator was appointed in 1896 superintendent of the city hospital, by the commissioner of public charities formerly of the city of New York. By the regulations of the civil service com missioners of the then city, the position occupied by the relator was one of those "to be filled by selection from those who have passed highest in open competitive examination." On January 1, 1898, the relator was transferred to the employment of the new city in the department of public charities; and he was removed therefrom on March 31st, the removal to date from April 1, 1898. On March 5, 1898, the municipal civil service commissioners of the present city appointed on the 1st of January, 1898, by the present mayor, made certain rules and regulations which were approved by the mayor; and by these the position of the relator was included in a schedule of "positions not subject to competitive examination." On March 31, 1898, chapter 186 of the Laws of 1898, which was an amendment to the civil service law, took effect. It was therein provided, among other things, that, if a person holding a position subject to competitive examination shall be removed or reduced, the reasons therefor shall be stated in writing, and the person have an opportunity to explain, and, further, that the civil service regulations of cities shall be approved by the state civil service board.

The question thus presented on this appeal is whether or not chapter 186 of the Laws of 1893 applies to the city of New York, the legality or illegality of the relator's removal depending upon its solution. This question necessarily involves an examination of the civil service legislation of the state, and more particularly of chapter 354 of the Laws of 1883, as amended by chapters 357 and 410 of the Laws of 1884, which will be referred to as the "law of 1883," being a law general in its application, and concededly applying, with its amendments, to all the cities of the state. As affecting this law of 1883, we have the subsequent enactments of chapter 428 of the Laws of 1897, which provided for a different system of examination, and the introduction of a new principle of merit and fitness; the former to be determined

by the civil service commissioners, and the fitness by the appointing power, but in no way impairing the general application of the law of 1883. In the charter of the new city (chapter 378, Laws 1897) various provisions were included in regard to the civil service, some of which may be briefly summarized as follows: Section 123 of the charter provides that:

"The mayor shall appoint three or more suitable persons as commissioners to prescribe and amend, subject to his approval, and to enforce regulations for appointment to and promotions in civil service thereof, and for classification and examination therein, and for the registration and selection of laborers for employment therein, in pursuance of the constitution of this state."

By section 124 it was enacted that:

"Such regulations shall, among other things, provide: (1) For the classification of the offices, places and employments in the civil service of the said city. (2) For examinations wherever practicable to ascertain the fitness of applicants for appointment. * * * All examinations shall be public. * * * (3) For the filling of vacancies in the offices. * * * (4) For a period of probation before an appointment or employment is made permanent (5) For promotions in office. * * *"

With reference to these provisions of the charter, the point in controversy turns upon the respective contentions as to their effect upon the state civil service law; the city insisting that the charter established a distinct system of municipal civil service for the city of New York, under which rules were to be formulated by a commission and approved by the mayor, which rules became effective without the approval of the state civil service commission; while the relator contends that the charter has not affected the provisions of the general law of 1883, as subsequently amended, so far as the approval of the state commission is concerned.

Chapter 186 of the Laws of 1898, known as the "Brush Law," purports to be an act to amend chapter 354 of the Laws of 1883, entitled "An act to regulate and improve the civil service of the state of New York." This did not in terms repeal any of the provisions of the charter, but was directed to amending, in terms, the general civil service law of the state; and, from whatever point of view we examine the question presented, it will reduce itself to a determination of the question already outlined, as to whether by the charter a local system of municipal civil service was created. This question, even if disposed of affirmatively, would still leave the further question as to the effect of the act of 1898 upon the charter. The former is the real crucial point; for, if we reach the conclusion that the charter did not create a special local system, then the city, being subject to the provisions of the general law, would clearly be affected by the act of 1883, as amended by the act of 1898.

Upon an examination of the provisions of the charter, and of the general civil service law, it must, we think, be conceded that between them there is a wide difference. By the general law, there was placed upon the mayors of cities all the duties in reference to the preparation and prescription of the regulations, with a proviso that such regulations prescribed by them must conform to the general scheme provided by the second section of the general law, and that the action of the mayors should be approved by the state board. In the provi-

sion of the charter quoted, it will be noted that the mayor of the city of New York is to appoint persons "as commissioners to prescribe and amend, subject to his approval, and to enforce regulations for appointment to and promotions in civil service thereof." Instead, therefore, of the mayor being the primary source of authority, as prescribed by the state law, there is given to him only the power of appointing commissioners, to whom is remitted action in relation to the civil service of the city; and their action, by the express language of the charter, is subject to the approval, not of the state board, as provided in the general law, but of the mayor. That the existence of the state board did not escape the attention of the framers of the charter is evident from the 125th section, which provides: "It shall be the duty of such municipal civil service commissioners to make reports from time to time" to the state board, whenever requested, as to the manner in which the civil service laws are administered. The relation of the state to the city board is thus pointed out, and instead of cumulative approval by the state board of the rules of the city board, approved by the mayor, we find in the charter provision for such reports being made by the city board to the state board from time to time as the latter requires and demands. It will be noted, moreover, that the provisions of the charter embrace a complete system for classification, examination, etc., and for the administration of the civil service system. Another difference to be noted is that, while the general act allows noncompetitive examinations, the charter provides that all examinations, with some slight exceptions enumerated, are based upon competition. So, too, in the general law, promotions are on the basis of "merit and competition"; while, in the charter, promotions are on the basis of "ascertained merit and seniority in service, and upon such examination as may be for the good of the service." Such striking differences evince the clear intention of those who framed the charter to provide a different system for the city of New York, which, so far as our attention has been called to the subject, is the only city having a special civil service provision in its charter. On January 1, 1898, therefore, while there was a state system for cities in general, there was provided for the city of New York, by its charter, a system differing in the particulars mentioned, existing side by side with the state system.

Under the state law the commissioners are appointed by the governor, and their rules are subject to his approval, while by the charter the commissioners are to be appointed by the mayor, and the rules and regulations made by them are subject to his approval. There is nothing in the charter which requires, in addition to the mayor's approval, the governor's approval or that of the state board. It would thus appear that it was the intention of the legislature to confer on the municipality the right to execute and administer the civil service under the provisions of the charter, with a requirement that reports on the subject were to be made to the state board whenever demanded. As to smaller cities in the state, therefore, the rules made by the local commissioners were subject to the approval of the state board; but it was deemed proper, on the establishment of the greater city, embracing a large area of territory, and constituting by

itself, in its population, interests, and extended area, almost a smaller state, to give the mayor power to appoint commissioners, who should formulate rules subject to his approval which would be applicable to such a municipality.    It will be thus seen that the status occupied by the mayor under the charter is analogous to the position of the governor under the state law.

In granting a new charter containing provisions permitting a different system of civil service, it is not claimed that the legislature exceeded its power or violated any constitutional ·prohibition.    It was within the province of the legislature to confer such a right upon a municipality; and, having reached the conclusion that the legislature did establish a separate system for the city of New York, the question remaining is as to the effect of chapter 186 of the Laws of 1898 upon the civil service provisions of the charter.    This is not an original and independent general law, but an amendment of one of the provisions of an existing general law, namely, the general law of 1883.    The charter, as we have seen, took the city of New York out of the operation of the existing general law .of 1883.    It is quite clear that the act of 1898, merely amending the general law, did not bring the city of New York back into the old environment.    It remained under its special system, and the other cities of the state continued exclusively under the operation of the general law as thus amended.

In a recent work on statutory construction it is said:

"General laws will not impliedly repeal those which are special or local. * * * The purpose of the general law may be carried out except as to the· particulars in which a different intention is manifested.    It is a principle that a negative statute without general words will not repeal, by implication from their repugnancy, the provisions of a former one which is special or local, unless there is something in the general law or in the course of legislation upon its subject-matter that makes it manifest· that the legislature contemplated and intended a repeal. * * * The general law can have full effect beyond the scope of the special law, and, by allowing. the latter to operate according to its special aim, the two acts stand together. Unless there is a plain indication of an intent that the general act shall repeal the other, it will continue to have effect, and the general words with which it conflicts will be· restrained and modified." Suth. St. Const. §§ 157, 158.

It will not be contended but that the charter of the city of New York is a special law, and part of a system of local administration, nor but that the act of 1898 is an amendment of a general law; and, as already pointed out, the special law withdrew the city of New York from the operation of the general law; and there is no provision in the law of 1898 amending the general law which brings the city back into the operation of the general law, or which repeals the special provisions of the charter on the subject of civil service.    So that the claim necessarily is of a repeal by implication.

On this subject the court of appeals, in Re Commissioners of Central. Park, 50 N. Y. 497, have said:

"The law does not favor a repeal of statutes by implication.    To work a repeal by implication, the intent of the legislature must be very apparent, or· the two must be so incongruous and repugnant that effect cannot be given to both. * * * A special and local statute providing for a particular case or· class of cases is not partially repealed or amended as to some of its provisions. by a statute general in its terms, provisions, and applications, unless the inten—

tion of the legislature to repeal or alter the particular law is manifest, although
the terms of the general act would, taken strictly, but for the special law, in-
clude the case or cases provided for by it." Capen v. Glover, 4 Mass. 305;
People v. Jaehne, 103 N. Y. 194, 8 N. E. 374; People v. Quigg, 59 N. Y. 83.

And in McKenna v. Edmundstone, 91 N. Y. 231, the court of appeals
said:

"It is well settled that a special and local statute providing for a particular
case or class of cases is not repealed by a subsequent statute general in its
terms, provisions, and applications, unless the intent to repeal or alter is mani-
fest, although the terms of the general act are broad enough to include the
cases embraced in the general act. In re Commissioners of Central Park, 50 N.
Y. 493. This is but the application of the larger rule that a statute is not to be
deemed repealed by implication by a subsequent act upon the same subject,
unless the two are manifestly inconsistent with and repugnant to each other,
or unless a clear intention is disclosed on the face of the latter statute to re-
peal the former one."

And in the recent case of Boechat v. Brown, 9 App. Div. 371, 41 N.
Y. Supp. 467, where the effect of a provision of the Code which was in
conflict with a section of the charter of the city of Buffalo was in-
volved, it was held that the latter, being a special or local law, was
not repealed by the former, for the reason that a general statute will
not be regarded as repealing or modifying a special or local one,
unless the intention so to do is clearly expressed, or unless such
repeal must follow by necessary implication.   A similar rule was ap-
plied in Lewis v. City of Syracuse, 13 App. Div. 587, 43 N. Y. Supp.
455, in which it was held that a general law (chapter 572, Laws 1886)
which fixed a limitation as to the time within which a cause of action
for negligence should accrue did not operate to repeal or amend a
section of the charter of the city of Syracuse which provided a differ-
ent period of limitation for such actions when brought against the city.

We must therefore regard the rule as settled that a general law,
in the absence of clear evidence of a legislative intent to that effect,
will not repeal a law which is special or local; and a fortiori is this
rule applicable to a mere amendment of a prior general law.   In the
act of 1898 there is an absence both of express language or clear legis-
lative intent arising by implication which would effect a repeal of the
charter provisions.   On the contrary, we think that the natural pre-
sumption from the enactment of such an amendment to a general law
which was in force when the special law was passed is that it was in-
tended to effect simply the subjects which were then governed by the
original act. There is nothing to show legislative intent to affect other
and different statutes prescribing special rules for a special locality.
The charter provisions had gone into effect but a few months before
the enactment in question; and, with presumed knowledge of the
charter provisions, it would have been a simple matter for the legisla-
ture, if it was intended to have that effect, to repeal them directly,
or have the act of 1898 apply in terms to the provisions of the charter.

We think that the order appealed from should be affirmed, with
costs.   All concur.