PEOPLE ex rel. TERRY v. KELLER.

(Supreme Court, Appellate Division, First Department.   December 9, 1898.)

1. MUNICIPAL CORPORATIONS — CIVIL SERVICE LAWS — GREATER NEW YORK CHARTER.

Laws 1898, c. 186, amending sections 8 and 13 of the general civil service act (Laws 1883, c. 354), was not applicable to the city of New York, as the new charter (Laws 1897, c. 378) provided a special civil service system for such city, and withdrew it from the operation of the general act, and such amendatory act made no mention of such charter, and disclosed no intention of repealing or altering any provision thereof.

2. SAME—APPROVAL OF REGULATIONS.

Under Laws 1883, c. 354, § 8, as amended by Laws 1898, c. 186, providing that all regulations relating to the civil service shall take effect only on the approval thereof by the civil service commissioners of the state, a civil officer holding a position by virtue of regulations which had not been approved by the civil service commissioners was not within section 13 of the amended act referred to, providing that, when a person holding a position subject to competitive examination shall be removed or reduced, the reasons therefor shall be stated in writing and filed, and such person shall have an opportunity to make an explanation, as such position was not one "subject to competitive examination."

3. SAME—COMPETITIVE EXAMINATIONS.

Const. art. 5, § 9, providing that appointments and promotions in the civil service shall be made according to merit and fitness, to be ascertained, so far as practicable, by competitive examinations, cannot be said to apply to a position of confidence and trust, in the government of a city, without legislation requiring such office to be filled after a competitive examination.

Appeal from special term.

Application by the people, on the relation of John W. Terry, against John W. Keller, commissioner of public charities for the

boroughs of Manhattan and the Bronx.    From an order denying a
mandamus requiring respondent to reinstate relator as superin-
tendent of the almshouse, from which he had been removed, relator
appeals.  Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY,
McLAUGHLIN, and INGRAHAM, JJ.

Julius M. Mayer, for appellant.
Theodore Connoly, for respondent.

INGRAHAM, J.   The question presented upon this appeal was
determined by this court in favor of the respondent in the case
of People v. Keller, 31 App. Div. 248, 52 N. Y. Supp. 950; and in
affirming this order it would be sufficient to refer to that case, were
it not for the claim of the counsel for the appellant that the judg-
ment of the court of appeals on the appeal from that order justi-
fies a strong inference that that case was not correctly decided.
When that case was before the court of appeals, Judge Gray de-
livered the opinion, in which the views expressed by this court
were affirmed, Judge Martin dissenting.  The order appealed from
was, however, affirmed upon another point, upon which all the
judges except Judge Martin concurred.   The only intimation as to
the question presented upon this appeal was that contained in the
opinion of Judge Gray.   Judge Martin dissented, but the reasons
for his so doing are not stated.   We have, however, re-examined the
question in the light of the criticism which has been made upon our
decision, and which has resulted in confirmation of the correctness
of the conclusion before arrived at.

· Prior to the passage of the new charter, the appointments in the
civil service of the state and in the cities of the state were regulated
by chapter 354 of the Laws of 1883.   It is conceded that that was
a general act.   It provided for three commissioners to constitute
the New York civil service commission, to be appointed by the
governor.  ˙ It prescribed the duties of such commissioners, provid-
ing for the appointment of subordinate officers, and for the exam-
ination of the applicants for appointment under the, civil service
of the state; and section 8 of the act provides for an extension of
the system to the cities of the state:

"The mayor of each city in this state having a population of fifty thousand
or over, as shown by the last census, is authorized to prescribe such regula-
tions for the admission of persons into the civil service of such city as may
best promote the efficiency thereof, and ascertain the fitness of candidates in
respect to character, knowledge and .ability for the branch of the service into
which they seek to enter, and for this purpose he may employ suitable persons
to conduct such inquiries and may prescribe their duties and establish regu-
lations for the conduct of the persons who may receive appointments in the
said service."

This act applied to the city of New York, and under it the mayor
of the said city prescribed regulations for the appointment of per-
sons to the civil service of the city.   Those regulations were in
force when the charter of the city of New York took effect, on the

1st day of January, 1898. By that charter a system for the regulation of appointments in the civil service was established which superseded the provisions of the general act which prior to this time had applied to the city of New York.

By section 123 of the charter, the mayor was directed to appoint three or more suitable persons as commissioners to prescribe and amend, subject to his approval, and to enforce, regulations for appointments to, and promotions in, the civil service of the city, and for classifications and examinations therein. The power thus conferred upon the mayor was quite distinct from that given by section 8 of the act of 1883. In the charter the mayor was to appoint commissioners to prescribe and make, subject to his approval, such regulations; while by section 8 of the Laws of 1883 the mayor was authorized to prescribe such regulations for the admission of persons into the civil service of such city as may best promote the efficiency thereof. The power of the mayor, in one case, was to appoint commissioners to make rules and regulations subject to his approval; in the other, the mayor himself was to make the regulations. The general act did not attempt to prescribe what such regulations should contain, while section 134 of the charter contains specific directions upon the subject. By section 125 of the charter, the duties of these municipal civil service commissioners are prescribed; and it was made the duty of all persons in the official service of the city to conform to, and comply with, said rules and regulations, and any modifications thereof, made pursuant to the authority of the section. This section also contains the following provision:

"Until the appointment of a municipal civil service commissioner under this act in said city, the municipal civil service commissioners now in existence in any part of the territory of said city shall continue in office, and the civil service rules now in force therein shall continue to be in force until the adoption of new rules hereunder."

Section 126 provides that no officer of the said city shall pay the salary of any person in its service whose appointment has not been made in pursuance of that chapter and the rules in force thereunder: provided, however, that the section would not apply to persons then in office, or who are by this act continued in office, or were transferred in service.

That the charter is a special act, and the provisions cited provide a complete system for the appointment to all positions in the civil service of the city, and that when that act took effect it superseded the general provisions contained in the act of 1883, cannot be doubted. It covered the entire ground provided for by the act of 1883, adding many provisions and restrictions not contained in the act of 1883, while continuing in office the civil service commissioners appointed under the act of 1883, and keeping in force the rules that had been established, until the appointment of civil service commissioners authorized by the charter and the adoption of new rules by them. Upon the appointment of such new commissioners, and the promulgation of rules and regulations by them, such new rules and regulations superseded those estab-

lished under the act of 1883; and the charter, and the rules made under its provisions, alone regulated the appointment to positions in the civil service of the city. The mayor, acting under the authority conferred upon him by the charter, appointed these commissioners. These commissioners formulated certain rules, which were duly approved by the mayor, and it is not claimed that such rules do not fully comply with the provisions of the charter. That these new rules superseded the old rules formerly adopted by the mayor of New York under the act of 1883 was expressly decided by the court of appeals in the Leet Case, 157 N. Y. 90, 51 N. E. 431. That portion of the opinion of Judge Gray which was concurred in by all the judges except Judge Martin says:

"These provisions [the act of 1898, hereafter referred to] clearly have reference to the future, and leave unaffected and in force all regulations which had been lawfully adopted at the time of the enactment of the act. Such regulations as had then been adopted were within the provisions of the charter, and, so far from there being any intention expressed to invalidate them, the contrary is apparent from the language quoted."

It is quite clear that had the mayor of the city of New York, after the charter went into effect, attempted to exercise the power conferred upon him by the act of 1883, by making rules and regulations for the appointment in the civil service of the city, or attempted to appoint officers in pursuance of the rules that were in operation before the charter went into effect, his action would have been illegal. The power that was vested in the mayor by the act of 1883 was taken away by the charter; and the provision contained in the charter for the appointment of officers in the civil service that were in force in the city of New York, after the approval of the new rules of the civil service commissioners by the mayor, were binding, not only upon the mayor, but all officials in the said city.

This being the situation, the legislature on March 28, 1898, passed chapter 186 of the Laws of 1898. This was, in terms, an amendment of the law of 1883, thus amending a general act which at the time did not apply to the city of New York. It contained no reference to the charter of the city of New York, and certainly no intention was expressed in the act to repeal any of the special provisions of law for the regulation of the civil service in the city of New York. Section 8 of the Laws of 1883, as amended by this act of 1898, provides:

"The mayor in each city in this state shall appoint and employ suitable persons to prescribe, amend, and enforce regulations for appointments to and promotion in the civil service of such city, and for the classifications and examinations therein; and for the registration and selection of laborers for employment therein, not inconsistent with the constitution and the provisions of this act."

And as amended it further provides:

"Within two months after the passage of this act, it shall be the duty of each of said mayors in and by such regulations to cause to be arranged in classes the several clerks and persons employed or being in the public service of the city of which he is mayor, and there shall be included in one or more such classes, so far as practicable, for the purposes of the examination herein provided for, all subordinate clerks and officers in the public service of the said city to whom his power under this act extends."

These provisions make it the duty of the mayor to make such classifications, while, under section 124 of the charter, these classifications of the officers in the civil service of the city are made by the rules and regulations prescribed by the commissioners of the civil service, which the mayor has the right only to approve or disapprove. By the charter, it is not the duty of the mayor to formulate rules and regulations, nor to make classifications, but that classification is to be made by the rules adopted by the civil service commissioners. Under the statute, it is the duty of the mayor to make the classification. Other provisions of this amendment to the act of 1883 are inconsistent with the express provisions of the charter which apply to the city of New York, and the charter of the city of New York contains provisions for the rules and regulations to be established by the commissioners which are not contained in the act of 1883 as amended. Both of these statutes cannot have been intended for the city of New York. Either the provisions of the charter were repealed by the amendment to the act of 1883, or the act of 1883, as amended by the act of 1898, did not apply to the city of New York. In 1898, when this amendment to the act of 1883 was passed, the charter itself was in force, as were also the rules and regulations adopted by the civil service commissioners appointed under the provisions of the charter and in compliance with its terms, and such rules and regulations had been approved by the mayor.

We are therefore presented with the distinct question as to whether, by the amendment of the act of 1883, passed in 1898, the provisions of the charter referred to were repealed. I suppose that the intention of the legislature in the passage of the act of 1898 is to be ascertained by the application of the settled rules for the construction of statutes generally, and certainly this court is not justified in applying other rules, in determining the effect of this statute, than those that have been the settled law of this state, and have been applied again and again by the court of appeals. It is the general rule applied in the construction of statutes, and which has been applied without a single exception to which our attention has been called or of which we have knowledge, that a special and local statute, providing for a particular case or class of cases, is not repealed by a subsequent statute, general in its terms, provisions, and application, unless by the language used the intent to repeal or alter is manifest, although the terms of the general act are broad enough to include the cases embraced in the special law. As was said by Judge Allen in the case of People v. Quigg, 59 N. Y. 88:

"Laws special or local in their application are not deemed repealed by general legislation except upon the clearest manifestation of an intent by the legislature to effect such repeal, and ordinarily an express repeal by some intelligible reference to the special act is necessary to accomplish that end."

This principle has been applied again and again by the courts of this state (In re Delaware & H. Canal Co., 69 N. Y. 209; McKenna v. Edmundstone, 91 N. Y. 231; In re Central Park Commissioners, 50 N. Y. 493; Bowen v. Lease, 5 Hill, 221; Van Denburgh v. Village of Greenbush, 66 N. Y. 1; Whipple v. Christian, 80 N. Y. 523); and has been applied universally in other states (1 Dill.

Mun. Corp. [4th Ed.] p. 143, § 54; 23 Am. & Eng. Enc. Law, p. 422, and cases there cited).

In Brown v. Lowell, 8 Metc. (Mass.) 175, Chief Justice Shaw says:

"In general, we should think it would require pretty strong terms in the general act, showing that it was intended to supersede the special acts, in order to hold it to be such a repeal."

In State v. Stoll, 17 Wall. 436, the court says:

"The provisions of a special charter or a special authority derived from the legislature are not affected by general legislation on the subject. The two are deemed to stand together,—one as the general law of the state; the other as the law of the particular case."

See, also, Tracy v. Goodwin, 5 Allen, 410; McNeely v. Woodruff, 13 N. J. Law, 356; People v. Hanrahan (Mich.) 42 N. W. 1124, and cases there cited; Mallory v. Com., 115 Pa. St. 25, 7 Atl. 790.

It is also a principle of universal application in the construction of statutes that the intention of the legislature shall be ascertained from the language used. "Courts are not to tamper with the clear and unequivocal meaning of the words used, although the consequences may not be such as contemplated by the legislature. There can be no departure from the plain meaning of a statute on the ground of its unwisdom or of public policy. * * * The question is not what the legislature meant, but what it said." 23 Am. & Eng. Enc. Law, pp. 299, 302, and cases there cited.

We have, therefore, a general statute applying to the city of New York, passed in 1883; and a special law in the charter of the city of New York, taking effect January, 1897, which provides a system for the city of New York, and which, being a special act, withdrew the city of New York from the provisions of the general act, so that the latter no longer related to the city of New York. We have, then, a statute which is, in substance and by its express terms, an amendment to this general act, and not applicable to the city of New York, and which does not, in terms, mention the special act relating to the city of New York, or disclose any intention of amending, repealing, or adding to any provision of the charter of the city of New York. If the principles to which attention has been called are applicable, it would seem that the conclusion must follow that this amendment of the general act of 1883 is not applicable to the city of New York.

If, however, it should be held that this amendment to the general act does repeal the provisions of the charter relating to the appointment of civil officers in the city of New York, I do not see how it could help the relator. The application is made to reinstate the relator to the position from which he was removed on the 1st of July, 1898, and he bases his right to be reinstated upon the provision of the amendment to section 13 of the act of 1883, as amended by the act of 1898. It is there provided:

"If a person holding a position subject to competitive examination in the civil service of the state or of a city shall be removed or reduced, the reasons therefor shall be stated in writing and filed with the head of the department

or other appointing officer, and the person so removed or reduced shall have an opportunity to make an explanation."

The relator alleges, and the respondent concedes, that the relator was removed, from the position that he held as superintendent of the almshouse, without an opportunity to make an explanation, and that no reasons for his removal were stated in writing and filed with the head of the department or other appointing officer. The relator claims that, by section 8 of the act of 1883 as amended, the regulations existing at the time of the passage of this act in the city of New York, not having been approved by the civil service commissioners of the state, ceased to be valid and effective; and that, under the provisions of the act of 1883, as he was an officer holding a position subject to competitive examination under the rules adopted by the former mayor of the city of New York, he could not be removed except after such opportunity for an explanation and the filing of the written reasons for his removal with the head of the department or other appointing officer. The rules and regulations formulated by the former mayor of New York, under the act of 1883, were expressly superseded by the rules formulated under the charter (section 124); and, if these rules could be revived by reason of the failure of the state civil service commissioners to approve the rules promulgated under the charter, they would still be subject to section 8 of the act of 1883 as amended, and would not be in force or effect without the approval of the civil service commissioners of the state.

We have thus a case where there has been no classification of the position held by this relator, and he is not, therefore, an officer holding a position subject to competitive examination. By the express provisions of the charter, the commissioner of public charities for the borough of Manhattan and the Bronx has authority to appoint and remove such subordinate officers or assistants as may be necessary for the efficient performance of his duties as such commissioner (Charter, § 659), and the commissioner has authority over public institutions situated within these boroughs (Id. § 660). By the express provisions of the charter, the power is thus given the respondent to appoint and remove the relator as superintendent of the almshouse of the borough of Manhattan, unless in some way that power was restricted by section 13 of the act of 1883, as amended by the act of 1898. And, to make such a restriction apply in favor of the relator, it must appear that the position he held was one subject to competitive examination under the civil service of the state. If the rules in force upon the adoption of the amendment of the act of 1883 became invalid by reason of the failure of the commissioners of civil service of the state to approve them, then no rules making classifications in the civil service of the city were in force which made the position of this relator one subject to competitive examination, and he does not, therefore, come within the provisions of section 13 of the act of 1898.

There was an intimation upon the argument that this position

might be one within the provisions of the state constitution. Article 5, § 9, of the state constitution provides:

"Appointments and promotions in the civil service of the state, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained so far as practicable, by examinations, which so far as practicable, shall be competitive."

But we do not think that this provision could be said to apply to such an office as that held by the relator without legislation under which such an office is one that should be filled after a competitive examination. The question as to whether this provision of the constitution is self-acting or not, and as to just what officers or class of officers it effects, is the subject of some doubt; but, where the legislature has established a method by which a classification of the officers of the city shall be provided which shall include offices to be filled after a competitive examination and those which will not, until such classification is made, and the general offices of the civil service are so classified, it would seem that the legislature would have power to prescribe a method of appointment of these officers, especially of those holding such a position of confidence and trust as that of superintendent of an almshouse, from which the relator was removed. Thus, unless this position is brought within the class of offices which are to be filled after a competitive examination of applicants, such competitive examination is not required. And this must have been the view taken by the court of appeals in the Leet Case, for there the order refusing a mandamus to reinstate the relator was affirmed. If the constitution had required all persons holding positions under the city government to be appointed after competitive examination, the express provisions of section 13 of the act of 1883 would have applied to Leet as well as to this relator, as no rules made by the civil service commissioners making his position not one to be filled after competitive examination would be of any force if that provision of the constitution required a competitive examination for the appointment of officers.

For the reasons stated in the Leet Case, as well as those here expressed, we think that the order appealed from should be affirmed, with costs.

VAN BRUNT, P. J., and BARRETT, J., concur.

RUMSEY, J. I concur upon authority of People v. Keller, 31 App. Div. 248, 52 N. Y. Supp. 950.

McLAUGHLIN, J. I concur upon the first ground.