PEOPLE ex rel. WARSCHAUER v. DALTON, Commissioner.

(Supreme Court, Appellate Division, First Department. June 8, 1900.)

1. MANDAMUS—LACHES.

    Where one discharged from a position in the department of water sup-
plies in the city of New York applied for mandamus to be restored, claim-
ing the right to restitution under the provisions of Greater New York
Charter, § 1543, at which time the decisions of the appellate division were
to the effect that his right to restitution was not under the general civil
service law of the state, and pending his appeal in such proceeding the
court of appeals decided in another case that the general civil service law
applied to the city, he is not barred by laches from maintaining manda-
mus proceedings under the latter law because he proceeded with his ap-
peal till its decision, two or three months thereafter, unsuccessfully con-
tending that his petition was broad enough to allow him relief under the
civil service law.

2. RES JUDICATA.

    An order adverse to relator, on application for mandamus to be restored
to a position in a department of New York City, is not a bar to his
second application, the first petition being based on a charter provision
of the city, and not being broad enough to assert his right under the
civil service law, on which he based his second petition.

    Ingraham, J., dissenting.

Appeal from special term, New York county.

Application by Severin Warschauer for mandamus to William Dal-
ton, commissioner of water supply of the city of New York. From
an order granting a peremptory writ, defendant appeals. Affirmed.

Argued before PATTERSON, P. J., and HATCH, RUMSEY, Mc-
LAUGHLIN, and INGRAHAM, JJ.

Theodore Connoly, for appellant.
Julius M. Mayer, for respondent.

PATTERSON, P. J. By the order from which this appeal is taken,
the relator was awarded a peremptory writ of mandamus commanding

the defendant, commissioner of water supply of the city of New York, to forthwith reinstate and re-employ him in the position of inspector of water supply to shipping, in the department of water supply of the city of New York, from which position he had been summarily removed by the defendant. The application to the court below was made upon a petition of the relator, with schedules annexed thereto, and in resistance an affidavit was presented on behalf of the defendant, with a stipulation made between the parties. The precise ground of the relator's present application is that he was removed from his position contrary to the provisions of section 3, c. 186, Laws 1898, which provides that:

"If a person holding a position subject to competitive examination in the civil service of the state or of a city shall be removed or reduced, the reasons therefor shall be stated in writing and filed with the head of the department or other appointing officer, and the person so removed or reduced shall have an opportunity of making an explanation."

Upon the case, as it comes before us, two questions are presented. First. Has the relator forfeited his right to the writ by unreasonable neglect in seeking his remedy? Second. Was his application barred by a former adjudication?

Those questions arise out of the following facts: In September, 1895, the commissioner of public works of the then corporation of the mayor, aldermen, and commonalty of the city of New York appointed the relator an inspector of water supply to shipping in the department of public works. He continued to be such until the Greater New York charter went into operation, when, in accordance with one of its provisions, he was assigned or transferred to the department of water supply of the present city of New York,—a similar position, with the same emoluments, to that held by him under the former muncipal corporation. He was removed from his position on or about the 11th of June, 1898, by the defendant. No charges were made against him, no reason for his removal stated in writing or filed with the head of the department of water supply, nor was he given nor did he have an opportunity to meet any charge or to make an explanation, nor did he have any notice whatever of an intention to remove him before that removal was actually made. He demanded reinstatement, tendered his services to the defendant, and protested against his removal, but his protest was unheeded and his demand refused. Thereupon, and on or about the 26th of September, 1898, he presented a petition to the supreme court, praying for a mandamus to reinstate him, and, if that were not allowed, for a writ of certiorari to review the determination of the defendant in discharging him. In that petition he claimed the right to reinstatement under the provisions of section 1543 of the Greater New York charter, on the ground that he held a position as a regular clerk, and consequently could not be removed therefrom unless he had been given an opportunity to make an explanation, as provided by that section. The appellant contends that the contents of the petition last referred to are much broader and disclose another ground upon which the application for a mandamus was then made. That contention will be more fully considered in another connection.

The relator's first application was denied, and upon appeal to this court the order of denial was affirmed (54 N. Y. Supp. 216); it being held that the relator was not a regular clerk, within the meaning of section 1543 of the Greater New York charter. Upon appeal to the court of appeals (53 N. E. 1113), the decision of this court was affirmed, and it was then definitely established that the relator was not entitled to relief or reinstatement under the provision of the Greater New York charter. Assuming, for the present, that in his first application his claim was founded only upon his asserted right as a regular clerk, we are to inquire whether his failure to claim under the civil service act should now deprive him of the relief he seeks, which is upon the specific ground that he held and was removed from a competitive position in the civil service without being afforded an opportunity of making an explanation, and without the formalities being complied with required by section 3, c. 186, Laws 1898, above quoted. Continuing the assumption that the relator's first application proceeded solely under the provision of the Greater New York charter, we must ascertain whether a valid reason is given for his omission to assert his right in that first proceeding under the civil service law, and upon that subject we find in the record enough to excuse him for such omission. That first proceeding was begun in September, 1898. The final order was entered at special term on October 7, 1898. The order of affirmance by the appellate division was entered on November 19, 1898. The appeal was heard in the court of appeals in May, 1899, and the decision of that court was made on the 6th of June, 1899. Prior to the 28th of February, 1899, it had resulted from certain authoritative adjudications that a person situated as this relator was, was not entitled to reinstatement under the provision of the general civil service law of the state. It had been decided by this court in the case of People ex rel. Leet v. Keller, 31 App. Div. 248, 52 N. Y. Supp. 950, that the charter of the city of New York was not repealed in any of its provisions by chapter 186 of the Laws of 1898, amending the general civil service law of 1883; and in the case of People ex rel. Terry v. Keller, 35 App. Div. 494, 54 N. Y. Supp. 1011, it was held by this court that the provisions of the Greater New York charter superseded the general provisions of the civil service act of 1883, and were not affected by the passage of chapter 186 of the Laws of 1898, amending the general act of 1883. The Leet Case was decided in this court in May, 1898, some months before the relator's petition was filed. His excuse for not claiming under the general civil service law is therefore a reasonable one, viz. that it had been adjudicated, in substance, that he could not rely upon a provision of that law. The condition of judicial decision remained the same until the court of appeals decided the Flemming Case in February, 1899 (158 N. Y. 175, 52 N. E. 1113), in which they held that there was no separate and distinct civil service system for the present city of New York, and that the general civil service laws of the state (Laws 1883, c. 354, and amendments) were applicable to that city, save when repealed directly or by implication by the charter. When that decision was announced, the relator's appeal in the first proceeding was pending before the court of appeals. We think

there was therefore a reasonable excuse up to the time at which the Flemming Case was decided. Knowledge of that decision came to the relator in March; his appeal to the court of appeals was argued in May. Should he in the meantime have discontinued his proceeding, and begun anew? We think he cannot be held to have been guilty of laches in not asserting in an independent proceeding his right when he was informed by the Flemming decision that it existed, for he made the effort in the court of appeals to have that very right recognized; he then insisting (as the appellant now insists) that his petition contained facts which brought him within the protection of the civil service act. But, as appears from the record before us, the court of appeals took a contrary view of that petition, and denied him relief—First, because the question had not been raised by his petition at the special term or in the court below; and, second, because that petition was insufficient to raise the question of his right under the general civil service law at all. We do not think that his insistence upon his appeal in the court of appeals between the months of March and May, 1899, and his failure to bring a new proceeding within that period or until the present one was brought, are evidence of such laches as should deprive him from the assertion of his right in this proceeding, and forever debar him from the enforcement of that right.

But the second ground upon which a reversal of the order now appealed from is urged by the appellant is that the relator's right was finally adjudicated against him in the former proceeding. We suppose that the plea of res judicata would apply to a proceeding of this kind, and that we are not to inquire as to the application of the doctrine to a mere order made upon a motion. It is expressly provided by section 2082 of the Code of Civil Procedure that a final order made in a mandamus proceeding shall have the effect of a final judgment, and, indeed, to all intents and purposes, be a final judgment. It enacts, among other things, as follows: "And the final order is deemed a final judgment." Therefore an adjudication made in a mandamus proceeding would furnish a bar to a new proceeding under the same rule that would apply when a judgment of a court of record is set up as a bar to a new suit or action.

It is needless to do more than state that the rule, in substance, is that the judgment of a court of competent jurisdiction, so long as that judgment is in force, is final and conclusive between parties and privies thereto as to all questions actually determined, and to those which might have been determined, within the issues raised by the pleadings and material to the determination. Pray v. Hegeman, 98 N. Y. 351; Jordan v. Van Epps, 85 N. Y. 436; Smith v. Smith, 79 N. Y. 634. To render the judgment effectual as a bar, the cause of action, the claim, or the asserted right must be substantially the same (Marsh v. Masterson, 101 N. Y. 407, 5 N. E. 59); but it must appear either by the record in the first action, or by extrinsic evidence, that the question was raised, or might have been raised or determined, under and within the issues as framed in the former suit. It was remarked by Judge Andrews in Pray v. Hegeman, supra, that the general rule is well settled that the estoppel of a former judgment

extends to every material matter within the issue which is expressly litigated and determined, as also to those matters which, although not expressly determined, are comprehended and involved in the thing expressly stated and decided, whether they were or were not actually litigated or considered. Here the contention of the appellant is that, the final adjudication on the relator's first application for a mandamus having been denied, his whole right to reinstatement, on whatever it may be founded, has been finally adjudged adversely to him. But his right asserted in the first application was only a right under the charter of the city of New York. We have not before us in the record the text of the final order entered upon the remittitur of the court of appeals, but we have the statements in the petitioner's papers which show that the only question which the court of appeals would entertain was his particular right to reinstatement under the Greater New York charter. We also have before us his petition in the first proceeding, and the appellant claims that it is apparent from its averments that the relator did then rely upon his having held a position in the competitive class in the civil service of the city, and that it necessarily follows from the nature of the allegations that the facts which would bring him within the protection of the civil service act were stated in that petition, and were therefore before the court. But the court of appeals has expressly decided that his right to reinstatement under the civil service law was not before that court because of insufficiency in the petition, and the question could not be raised there, for it was not within the issues presented by that first petition. Concerning that petition, the court of appeals said: "We must reach the conclusion that the relator did not show in his petition that he was within the protection of chapter 186 of the Laws of 1898, in that his petition fails to state that his position under the civil service law and rules was classified as competitive." Of course, the opinion of the court of appeals is not a part of the record in this case, and we cannot and do not resort to it as evidence, but it is a controlling authority of the court of last resort in giving construction to the very petition upon the averments of which the appellant relies to establish that which the court says it does not contain. We take the construction of the court of appeals as given to this petition, from which it results that no right was asserted therein under the civil service law, no issue was raised concerning it, no adjudication was had or could have been had upon that right, and therefore there is no bar. That the ultimate object secured by the writ of mandamus in this second proceeding is the same as that sought to be secured by the first proceeding does not affect the question. The relator has obtained a better writ on another and distinct claim of right. That claim of right is not involved in both proceedings.

We are therefore of the opinion that the case was well decided in the court below, and that the order should be affirmed, with costs.

RUMSEY, McLAUGHLIN, and HATCH, JJ., concur.

INGRAHAM, J. I do not concur in the affirmance of this order. The relator was removed on the 11th of June, 1898, and presented

a petition to this court alleging that his removal was illegal, and the relief asked was that he be reinstated by mandamus. Whether such removal was illegal was the question to be determined in that proceeding, and that question was determined against the relator, which determination was affirmed on appeal to this court and to the court of appeals. The relator now claims that, because he did not allege in his petition that his removal was illegal under section 3, c. 186, Laws 1898, that adjudication is not a bar to this proceeding. A final order in a special proceeding has the same effect as a final judgment in an action (Code Civ. Proc. § 2082), and it must be conceded that, if the relator seeks in this proceeding to obtain the same relief that he sought in the former proceeding, the former adjudication is a bar to this proceeding. The relator there claimed that his removal was illegal, and that he was entitled to be reinstated in his position. He might have made that claim upon two grounds: (1) Under the charter of the city of New York, and (2) under the act of 1898. But in either case what he asserted was his illegal removal, and the relief that he asked was to be reinstated. It seems to me that when he made his application to be reinstated, upon the ground that he was illegally removed, a determination against him upon that application was a bar to another proceeding for a reinstatement, and he was not entitled to commence another proceeding, the final order denying his first application remaining in full force. Certainly, in an action in which specific relief is asked on the ground that the action of the defendant was illegal, the plaintiff, after judgment against him on the merits, would not be allowed to maintain a second action brought to obtain the same relief. The rule is stated in 21 Am. & Eng. Enc. Law, p. 204: "It is the policy of the law to avoid repetition of suits, and when one action will include all there is in a case any further action will be discontinued and discouraged. A recovery on one part of an action, if it be split up, will bar a suit for the whole or any part." And the cases cited in the note support the statement in the text.

I think the order should be reversed, and the proceeding dismissed.