THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM R.
   FLEMING, Appellant, v. WILLIAM DALTON, Commissioner
   of Water Supply of the City of New York, and JAMES
   MOFFETT, Deputy Commissioner of Water Supply of the
   City of New York, Borough of Brooklyn, Respondents.

1. CIVIL SERVICE — NEW YORK CITY.   There is no separate and dis-
tinct civil service system provided for the present city of New York by
its charter (L. 1897, ch. 378), and the general civil service laws of the state
(L. 1883, ch. 354, and amendments) are applicable to that city, save where
repealed directly, or by implication by that charter.

2. APPLICATION OF AMENDMENT OF 1898.   The amendment of 1898
(Ch. 186) to the general Civil Service Act of 1883 applies to the city of
New York, and being the latest expression of the legislative will and
intended to have that effect it modified and repealed the provisions of the
Greater New York charter, so far as inconsistent with it, and subjected
the present city to new civil service provisions.

3. APPLICATION OF GENERAL ACT.   The application of the general act
of 1898 to the present city of New York having been clearly intended by
the legislature, the rule against the implied repeal of a special or local
statute by a subsequent general statute does not apply.

4. UNLAWFUL REMOVAL FROM COMPETITIVE POSITION.   The new civil
service regulations of the city of New York, adopted under its charter,
were in force on April 11, 1898, and an employee of the city holding a
position classified by those regulations as subject to competitive examina-
tion was then entitled, under the act of 1898 amending the general Civil
Service Act, to have the reasons for his removal stated in writing and filed,
and an opportunity to make explanation; and the removal of such an
employee on that date without compliance with the requirements of the
act of 1898 was without due warrant of law.

*People ex rel. Fleming* v. *Dalton*, 34 App. Div. 627, reversed.

(Argued January 10, 1899; decided February 28, 1899.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the second judicial department, entered
December 1, 1898, reversing an order of the Special Term
granting an application for a peremptory writ of mandamus
commanding the respondents to reinstate and employ relator
in the position of foreman of the eastern district repair yard,
department of water supply, borough of Brooklyn, from which

he was removed on April 11, 1898, and for further appropriate relief.

The facts, so far as material, are stated in the opinion.

*Samuel H. Ordway* and *Herbert H. Kellogg* for appellant. It is essential to the determination of the questions here presented to ascertain the legislative intent. (*Matter of Dobson*, 146 N. Y. 357; *Stack* v. *City of Brooklyn*, 150 N. Y. 335; *People* v. *Jaehne*, 103 N. Y. 182; *People ex rel.* v. *Lacombe*, 99 N. Y. 43; *Coutant* v. *People*, 11 Wend. 511; *Warner* v. *Beers*, 23 Wend. 103; *People* v. *Purdy*, 2 Hill, 31; *S. A. R. R. Co.* v. *G. E. R. R. Co.*, 3 Abb. [N. C.] 372; *Blake* v. *Nat. Banks*, 23 Wall. 307; *Edger* v. *Commissioners*, 70 Ind. 331.) The regulation of the civil service of the state and of the cities thereof is properly a state function, to be governed, regulated and controlled by the state authorities, and has always been recognized as such by the legislature and the People. (L. 1897, ch. 378, § 1620; *Ferguson* v. *Ross*, 126 N. Y. 459; L. 1891, ch. 105; L. 1898, ch. 182; *Rogers* v. *Buffalo*, 123 N. Y. 173; *People ex rel.* v. *Murray*, 149 N. Y. 367.) The charter of the city of New York does not constitute or form a distinct, separate and complete local system of civil service laws applicable to the city of New York alone, and exclusive of all other legislation on the subject, and was not intended to do so by the legislature. (*Bowen* v. *Lease*, 5 Hill, 221; *McCartee* v. *O. A. S.*, 9 Cow. 437; *Chamberlain* v. *Chamberlain*, 43 N. Y. 424; *People ex rel.* v. *Angle*, 109 N. Y. 564.) Chapter 186 of the Laws of 1898 modified and repealed the provisions of the charter, so far as inconsistent with it, and amended it by adding certain new and additional provisions. (*People ex rel.* v. *Supervisors*, 67 N. Y. 109; *People* v. *Wilmerding*, 136 N. Y. 363; *Matter of Prime*, 136 N. Y. 347; *Matter of Dobson*, 146 N. Y. 357; *People* v. *Jaehne*, 103 N. Y. 182; *Comrs. of Excise* v. *Burtis*, 103 N. Y. 136; Black on Interp. of Laws, § 153; Suth. on Stat. Const. § 159; *Matter of Henneberger*, 155 N. Y. 420.) Section 3 of chapter 186 of the Laws of 1898 applies to New York city,

and has been in full force and effect since March 31, 1898, and this is all that is necessary to sustain the order made in this case at Special Term. (Endlich on Interp. Stat. §§ 43, 107; *Hudler* v. *Golden*, 36 N. Y. 446; Sedg. on Const. Law [2d ed.], 209; Potter's Dwarris on Stat. 73, 189, 231; *Bowen* v. *Lease*, 5 Hill, 221; *Chamberlain* v. *Chamberlain*, 43 N. Y. 424.) Section 1618 of the charter contains nothing which requires a decision inconsistent with the position of the relator as stated in the foregoing points. (*Mongeon* v. *People*, 55 N. Y. 613.) Even if chapter 186 of the Laws of 1898 does not apply to the city of New York, the charter of the city of New York required that a statement showing the reasons for the removal of the relator should be filed in the department of water supply in which he was employed, and as no such statement was filed, his removal was illegal, and he is entitled to be reinstated. (L. 1897, ch. 378, § 1543.)

*Theodore Connoly* and *William J. Carr* for respondents. If sections 1536 and 1543 of the charter govern exclusively, the dismissal of the relator was legal. (*People ex rel.* v. *Fire Comrs.*, 73 N. Y. 437; *People ex rel.* v. *Fire Comrs.*, 86 N. Y. 149; *People ex rel.* v. *Dalton*, 54 N. Y. Supp. 216; *People ex rel.* v. *Keller*, 157 N. Y. 90.) Section 3 of chapter 186 of the Laws of 1898 did not at the time of the dismissal of relator affect New York city. (*People ex rel.* v. *Keller*, 157 N. Y. 90.)

BARTLETT, J. The relator on January 1st, 1898, passed from the employ of the late city of Brooklyn to that of the city of New York, in pursuance of section 1536 of the Greater New York charter, continuing in the same position he had held prior to that time.

Relator's position was subject to a competitive examination under the civil service regulations of the city of Brooklyn, and also under the new civil service regulations of the city of New York, adopted March 5th, 1898. On April 11th, 1898,

the relator was summarily removed from his position, without charges made against him, and in this mandamus proceeding the regularity of the removal is challenged.

It is argued on behalf of the relator that he was protected from such summary removal by chapter 186 of the Laws of 1898, entitled " An act to amend chapter three hundred and fifty-four of the Laws of eighteen hundred and eighty-three, entitled ' An act to regulate and improve the civil service of the state of New York.' " Section three of the act of 1898 amends section thirteen of the act of 1883 by adding thereto the following: " * * *; and if a person holding a position subject to competitive examination in the civil service of the state or of a city shall be removed or reduced the reasons therefor shall be stated in writing and filed with the head of the department or other appointing officer, and the person so removed or reduced shall have an opportunity to make an explanation.".

It is insisted on behalf of the respondents that the Greater New York charter creates a distinct and separate civil service system for the new city, which is governed exclusively by the provisions of the charter and the civil service regulations prescribed by the commissioners under the charter and approved by the mayor; that the existing general laws of the state have no application thereto, and that as the act of 1898 is amendatory of the General Civil Service Law of 1883 it does not apply to the city of New York.

The question presented by this appeal is one of far-reaching importance, and involves the unity and integrity of the civil service system in this state. If it be true that the legislature has provided a separate and distinct civil service system for the city of New York, we should find it written in statutory provisions that admit of no other construction. On turning to the Greater New York charter we find no chapter, or title of a chapter, that deals with and creates a complete civil service system; but, on the contrary, we discover that sections 123 to 126, 304, 727, 728 and 1536 are not in any sense a complete civil service system, but contemplate an effective administra-

tion of the general civil service laws of the state as modified by the charter, without great or radical changes.

When the act of 1883, as amended in 1884 (Ch. 410), is compared with the charter, it will be seen that there is little difference.

The act of 1883, as amended in 1884, vested in the mayors of cities the power to make regulations to promote the efficiency of the civil service, but such regulations were subject to the approval of the New York civil service commission, and all examinations conducted thereunder were subject to the inspection of the commission. This approval and supervision of the state commission originated in the amendatory act of 1884.

The Greater Charter provides (§ 123): " The mayor shall appoint three or more suitable persons as commissioners to prescribe and amend, subject to his approval, and to enforce regulations," etc.

It is argued that the change from the provisions of the general law, which required the mayor to make regulations, to the scheme of the charter, which imposes upon the mayor the duty of appointing commissioners to prescribe regulations, subject to his approval, is significant, and evinces a change of system. We are unable to so regard it, but consider it an enactment substantially in harmony with the general law. It contains provisions as to commissioners calculated to relieve the mayor of a great city like New York from the labor of preparing regulations, and also permits him to call in to his assistance experienced men, but the entire work is subject to his approval, and is as much under his control as before.

The few sections relating to the civil service are scattered through the charter, and were evidently inserted to place in convenient form such provisions of the general law as were peculiarly applicable to the city. Sections 123 to 126 are found in chapter V, entitled, " The Mayor." Section 304 is found in chapter VIII, entitled the " Police Department." Sections 727 and 728 are in chapter XV, " Fire Department," and section 1536 in chapter XXII, " General Statutes," dealing with retention of old clerks in territory consolidated.

As before stated, there is no general scheme disclosed to create a separate and distinct civil service system for the city of New York; the charter is destitute of any such provisions.

In addition to this, an examination of the general civil service laws of the state, in connection with the charter, makes it manifest that the legislature never contemplated that two warring and inconsistent civil service systems should exist side by side in the state, so that an act may be performed with impunity in the city of New York which is a misdemeanor in the state at large.

The learned counsel for the appellant in his able brief has by his industry greatly aided the court in this connection.

He points out that the report of the charter commission, through its committee on draft, said: "A civil service commission has been created on the lines of the *present law.*"

Section 124 of the charter provides for open competitive examinations and a variety of other matters contained in the law of 1883, which apply particularly to the administration of the civil service in the city of New York, and were evidently placed there for convenience.

This same section (124) provides for two changes, viz., the competitive examination of applicants for employment as laborers is made obligatory, subject to certain exceptions; promotions in office are on the basis of ascertained merit and seniority in service and upon such examination as may be for the good of the public service.

In construing the general civil service laws of the state, in connection with the Greater Charter, the proper rule of construction is that any provisions in the general law inconsistent with the charter are repealed by implication so far as the city is concerned. As to all other provisions of the general law they are as applicable to the city of New York to-day as to any other part of the state.

There are many provisions of the general law not mentioned in the charter that are applicable to the city of New York; such are the provisions of section five, in regard to the cor-

1899.]      People ex rel. Fleming *v.* Dalton.      **181**

N. Y. Rep.]      Opinion of the Court, per Bartlett, J.

rupt conduct of examinations, and towards persons examined; the provisions of section nine, prohibiting recommendations from a senator or member of assembly; the provisions of sections eleven and twelve, prohibiting political assessments; the provisions of section fourteen, prohibiting corrupt use of authority or influence to procure appointments, and especially the provisions of section eight, exempting from civil service rules and regulations, and from examinations officers elected by the people and a number of other persons mentioned.

There are many other provisions of the general law which might be mentioned, constituting a part of the civil service system of the state, and essential to its unity and integrity that are still binding upon the city of New York.

We come now to consider the act of 1898 (Ch. 186), but before doing so, will refer to our decision in the case of *People ex rel. Leet* v. *Keller* (157 N. Y. 90), which seems to have been the subject of considerable misapprehension.

The relator in that case was superintendent of the city hospital in the old city of New York, and his position was subject to a competitive examination. On January 1st, 1898, he was transferred to the employment of the new city and was thereafter removed to take effect April 1st, 1898. On March 5th, 1898, new civil service regulations went into effect in the present city of New York, under which the position of the relator was classified as non-competitive. Relator defended on the ground that he was removed without the reasons being stated in writing, filed, and opportunity for him to make an explanation as provided in the act of 1898. The two questions before us in that case were, *first*, did the act of 1898 apply to the city of New York, and, *second*, was it a defense under the facts disclosed?

If the act did not apply to the city of New York there was no necessity to construe it; but a majority of the court decided, by construing it, that it did apply and held that as the new civil service regulations for the city of New York took effect March 5th, 1898, and the act of 1898 did not become a law until March 31st, 1898, the act gave ninety days in which the

new and existing regulations might be approved by the state civil service commission, and that they were in force in the meantime.  This resulted in our holding the removal of the relator regular on April 1st, 1898.

The opinion, in the first ground discussed, expresses the views of the dissenting judges, and in the second ground deals with the decision of the court.  The case at bar presents a very different question than the *Leet* case just referred to, but does involve the applicability of the act of 1898 to the city of New York.  We have treated the latter question as if open, in order to discuss it.  In the case before us the relator's position was not only competitive under the regulations of the old city, but was classified as competitive under the civil service regulations of the present city.

It, therefore, follows that if the act of 1898 applies to the city of New York, the relator was improperly removed, as under that act he was entitled to have the reasons for his removal stated in writing, filed, and an opportunity afforded him to explain.

As we have reached the conclusion that there is no separate and distinct civil service system provided for the present city of New York in its charter, and that the general civil service laws of the state are applicable to that city, save where repealed directly, or by implication by that charter, it follows, subject to this limitation, that the act of 1883 (Ch. 354), as amended by various acts, and finally amended by the act of 1898 (Ch. 186), is applicable to the city of New York.

The act of 1898 modified and repealed the provisions of the Greater New York charter so far as inconsistent with it, and subjected the present city to new civil service provisions by amending the act of 1883.

The respondents' argument rests on the rule, about which there is no difference of opinion, that a special and local statute, providing for a particular case, or class of cases, is not repealed by a subsequent statute, general in its terms, provisions and application, unless by the language used the intent to repeal or alter is manifest.

There are several answers to this position.

1. In amending the general civil service laws of the state which are applicable to the city of New York, as well as the state at large, it is very doubtful whether the rule invoked is to be applied, in view of the fact that the charter creates no separate system.

2. It is clear on the face of the act that the legislature intended that it should apply to the entire state, including the city of New York.

The act not only is an amendment of the law of 1883, thereby being applicable to the city of New York by virtue of that fact, but it deals directly with section eight of the act of 1883, as amended by the act of 1884, and changes it in most important particulars.

It requires the mayor " of each city in this state " to appoint and employ suitable persons to prescribe, amend and enforce regulations for examinations and classifications in the civil service, so that the charter of New York is no longer different in that respect from those of other cities.

The classifications were to be made within two months after the passage of the act. After the termination of three months from the passage of the act no appointments or promotions could be made except in conformity with such regulations.

Then follow these most significant words : " Such regulations herein prescribed and established and all regulations now existing for appointment and promotion in the civil service of said city and any subsequent modification thereof, *shall take effect only* upon the approval of the mayor of the city and of the New York civil service commission."

We have here the clear intention of the legislature that every city of the state should conform to the provisions of section eight of the act of 1883, as amended in 1884, by still further amending the same and by a more stringent enactment compelling obedience by the officials of all cities.

After providing for classification within two months, and prohibiting appointments or promotions after three months, the legislature declares that the regulations so prescribed and

established, and " all regulations now existing " and any sub-
sequent modification thereof, "shall take effect only" upon
the approval of the mayor and the New York civil service
commission.

The act also provides that the regulations in each city
shall no longer exclude from classification certain subordinates
of elective officers, or the subordinates and employees of the
educational department and places the limitation on the power
of removal already commented upon, as contained in section
three, amending section thirteen of the act of 1883.

We are of opinion that the legislative intention is clearly
manifested to make this act general and applicable to the
entire state.

" A general statute will repeal special or local acts without
expressly naming them, where they are inconsistent with it,
and where it can be seen from the whole enactment that it
was the intention of the legislature to sweep away all local
peculiarities thus sanctioned by special acts, and to establish
one uniform system." (Black on Interpretation of Laws, sec-
tion 153.)

" There is no rule of law which prohibits the repeal of a
special act by a general one, nor is there any principle for-
bidding such repeal without the use of words declarative of
that intent.

" The question is always one of intention, and the purpose
of abrogating a particular enactment by a later general stat-
ute is sufficiently manifested when the provisions cannot
stand together." (Sutherland on Statutory Construction, sec
tion 159. See, on this point generally, *Matter of Dobson*,
146 N. Y. 357; *People* v. *Jaehne*, 103 N. Y. 182; *Board of*
*Commissioners of Excise* v. *Burtis*, 103 N. Y. 136.)

3. If there was any doubt as to the meaning of the act of
1898, or the intention of the legislature in passing it, recourse
might be had to the records and journals of that body, show-
ing the history of the measure and the debates thereupon for
the purpose of ascertaining that meaning and intention.
(*Coutant* v. *People*, 11 Wend. 511; *Warner* v. *Beers*, 23

Wend. 103; *People* v. *Purdy*, 2 Hill, 31, 37; *Sixth Ave. R. R. Co.* v. *Gilbert El. R. R. Co.*, 3 Abb. N. C. 372; *Blake* v. *National Banks*, 23 Wallace, 307.) It is a common practice in this court to have recourse to the debates of the constitutional convention in order to decide questions of difficult and doubtful construction.

The counsel for appellant has submitted, as part of his brief, a copy of the minutes of the debate on the act of 1898 taken by the official stenographer of the assembly. These minutes disclose that the entire debate proceeded upon the assumption that this act applied to the city of New York, and was brought forward to meet the opinion of the corporation counsel of the city of New York that the provisions of the charter of the city should prevail over the general civil service laws of the state.

There can be no doubt that the legislature was fully advised as to the situation of affairs in the city of New York that led to the enactment of this law, and that members voting against it did so because it applied to the city and was likely to limit, to some extent, its existing charter.

There are other points discussed, but it is unnecessary to consider them.

There is one suggestion made by the counsel for appellant that bears very strongly upon the intention of the legislature in passing the Greater New York charter.

Section 127 of the charter applies only to those veterans actually in the employ on January 1st, 1898, of any municipality included in the consolidated territory.

As to all veterans not in the employ of the new city it must be assumed, in view of the declared policy of the people, that the legislature considered them within the protection of the general veteran laws of the state.

If the framers of the charter had contemplated a separate and distinct civil service system for the city, it may be safely assumed they would have enacted along with it as a distinct veteran system the general laws known as the veteran acts, which afford protection to those who are so peculiarly the

objects of popular solicitude that their rights under the civil service laws have been guarded by constitutional amendment.

We are of opinion that the relator was removed without due warrant of law, as the new civil service regulations of the city of New York were in force at that time, April 11th, 1898, and classified his position as subject to competitive examination; he was, therefore, entitled, under section three of the act of 1898, amending section thirteen of the act of 1883, to have the reasons for his removal stated in writing, filed, and an opportunity afforded him to make an explanation.

The order of the Appellate Division should be reversed and the order of the Special Term affirmed, with costs in all the courts.

Gray, J. (dissenting.) I dissent from the conclusion reached by Judge Bartlett, that the order of the Appellate Division should be reversed, upon two grounds. In the first place, chapter 186 of the Laws of 1898 did not apply to the city of New York; my reasons for that statement being given in the *Leet Case*, (157 N. Y. 90), and again, somewhat more fully expressed, in the *Terry* case, decided at this term.

In the second place, the act of 1898, referred to, was prospective in its operation and did not affect the civil service rules and regulations which were adopted by the municipal civil service commissioners of the city of New York, on March 5th, 1898, and which were existing at the time; nor would affect them, until the expiration of three months, when they would cease, if not previously approved by the state board. Therefore, the removal of the relator on April 11th, 1898, because effected under regulations at the time not affected by the amending act of 1898, was valid. This ground is also covered by the discussion in the *Leet* and *Terry Cases* (*supra*).

I think that the order of the Appellate Division should be affirmed, with costs. O'Brien, J., concurs.

All concur (Parker, Ch. J., in result) with Bartlett, J., for reversal, except Gray and O'Brien, JJ., who file dissenting memorandum.

Order reversed, etc.