(27 Misc. Rep. 662.)

### PEOPLE ex rel. TIERNEY v. SCANNELL.

(Supreme Court, Special Term, New York County. June, 1899.)

MANDAMUS—LACHES.

There is no laches in an application for mandamus to be restored to a municipal office from which relator was removed without the proceedings prescribed by Laws 1898, amending the general civil service act (Laws 1883, c. 354); it being held at the time by the corporation counsel and the appellate division for the department that the act of 1898 did not apply to the city of New York, and it being generally understood between the corporation counsel and representatives of discharged employés, of whom there were a number, that all other cases should be held in abeyance till final decision of selected test cases, and relator having commenced his proceedings within four months after such decision by the court of appeals, though not within that time after his discharge.

Mandamus proceedings, on relation of James E. Tierney, against John J. Scannell, fire commissioner of the city of New York. Relator moves for a peremptory writ. Granted.

Mayer & Gilbert, for the motion.

John Whalen, Corp. Counsel, opposed.

SCOTT, J. The relator, who held the office or position of oil collector in the fire department of the city of New York, was discharged by the defendant, the fire commissioner, on July 6, 1898. The reasons for such removal were not reduced to writing and filed in the department, nor was the relator afforded an opportunity to make an explanation, as required by chapter 186 of the Laws of 1898, amend-

ing the general civil service act (chapter 354, Laws 1883). Although the defendant, at the time he made the removal, undoubtedly believed that the act of 1898 did not apply to the city of New York, and was justified in so believing by the opinion and decision of the appellate division in this department, the court of appeals has since decided, in a case precisely similar to that of the relator, that the act of 1898 did apply to the city of New York. Consequently, it is now conceded that the relator's removal was illegal and void. It is urged, however, that he has been guilty of such laches in making application for reinstatement, that the court, following well-known precedents cited by defendant, will refuse to aid him by issuing a writ of mandamus. There is no statutory limitation with respect to the time within which application for a writ of mandamus may be made in a case like the present, but this court, exercising its discretion as to the issuance of the writ, has repeatedly held that ordinarily a limitation of time should be applied to these applications, analogous to the statutory limitation applied to writs of certiorari. People v. Justices, 78 Hun, 334, 29 N. Y. Supp. 157; People v. Collis, 6 App. Div. 467, 39 N. Y. Supp. 698. It is manifest that in an ordinary case, where no special reason exists to the contrary, the courts should refuse to aid a discharged official who sleeps upon his rights, fails to advise the city authorities that he claims that his removal was illegal, and permits another to be appointed in his place, to receive his salary and perform his duties. The rule applying a four-months limitation to proceedings like the present is not, however, a hard and fast one, to be applied to every application without exception. It should and will be applied in every case where the applicant presents no satisfactory reason or excuse for this delay. When he does present such reasons or excuses, however, it is the duty of the court to examine and consider them, with a view to determining, not whether the applicant has explained his laches, but, strictly speaking, whether, under all the circumstances, he has been guilty of laches at all. Mere delay does not of itself constitute laches, and, if a relator shows that his delay in moving has been founded upon sufficient reason and good faith, it is impossible to say that he has been guilty of laches. In short, every case must rest upon its own special facts and circumstances. In re McDonald, 34 App. Div. 512, 54 N. Y. Supp. 525. In the present case the uncontradicted affidavits show a very unusual condition of affairs. The act (chapter 186, Laws 1898) was passed on March 31, 1898. It provided, among other things, that, if a person holding a position subject to a competitive examination in the civil service of the state or of a city shall be removed or reduced, the reason therefor shall be stated in writing, and filed with the head of the department or other appointing officer, and the person so removed or reduced shall have an opportunity to make an explanation. Serious questions at once arose as to the scope and application of this act, which excited very general interest. If it was applicable to the city of New York, the power of removal by the heads of departments would be much curtailed, and the assurance of permanency of tenure by a large class of public officials would be correspondingly enlarged. On May 17, 1898, the corporation counsel officially expressed the opin-

ion that the act did not apply to the city of New York and the officers and departments thereof. A few days earlier a proceeding had been commenced by one Leet against the commissioners of charities, in which it was believed that the question would be judicially decided and set at rest. Leet's application was denied at special term, and on appeal to the appellate division the order was affirmed, that court holding that the act of 1898 had no reference to the city of New York. People ex rel. Leet v. Keller, 31 App. Div. 248, 52 N. Y. Supp. 950. Thus, for the time being, at least, it was authoritatively determined that the act of 1898 afforded no protection to persons situated as was this relator. The decision of the appellate division was rendered on June 29, 1898, and, although an appeal was at once taken, it could not be brought on for argument earlier than October. On October 28, 1898, the court of appeals affirmed the order in the Leet Case, rendering an opinion which left in doubt the question whether the act of 1898 did or did not apply to the city of New York. There was pending at the time in the second department a mandamus proceeding instituted by one Fleming, who held a position in one of the competitive schedules, who had been removed after March 31st, and before July 1st. After a consultation between the assistant corporation counsel and counsel representing a number of discharged employés, it was determined to select, out of a number of proceedings then pending, two, which, with the Fleming Case, would, as was believed, involve and necessitate the determination of every question arising under the act of 1898, so far as it affected removals in the city of New York. The cases there selected were those of Baillie, who held a position in a competitive schedule, and was removed after July 1, 1898, and Terry, who held a noncompetitive position, and was removed on July 1, 1898. The two cases then selected were pressed forward as rapidly as possible. In the Baillie Case, corresponding in every respect to that of the relator, the application was denied at special term, and the order affirmed by the appellate division, which handed down an opinion reiterating the views expressed in the Leet Case. Finally, on February 28, 1899, the court of appeals reversed the orders in the Fleming and Baillie Cases, and it was then for the first time determined by a court of appellate jurisdiction that the act of 1898 did apply to the city of New York, and that persons in the public service in that city, holding positions in a competitive schedule, could not be removed except in compliance with the provisions of that act. People ex rel. Fleming v. Dalton, 158 N. Y. 186, 52 N. E. 1113; People ex rel. Baillie v. Scannell, 158 N. Y. 686, 53 N. E. 1129. The relator had been removed on July 6, 1898. At that time it had been held, both by the corporation counsel and the appellate division in this department, that he and others similarly situated were not protected by the act of 1898, and that his removal was valid and effectual. That the question was a debatable, if not a doubtful, one, had been well known to him and the officers of the city, who, through their legal representative, were seeking to have it finally determined. It was well known to the relator that proceedings were pending in which the question as to the legality of his removal must speedily be determined. To have commenced proceedings for reinstatement at

that time, or at any time before the court of appeals had passed upon the question, would have been an idle ceremony, of no advantage either to him or to the city, and would have served only to increase the volume of litigation. I think it is a fair inference, from the uncontradicted statements contained in the affidavits of the relator and his counsel, that it was generally understood between the representatives of the discharged men and the city's legal adviser that all the cases involving the validity of discharges should be held in abeyance until the final decision of the selected test cases. Under the circumstances, it does not seem that the relator can be charged with laches because he awaited the result of those test cases. It is not possible that the city's officers can have been misled by his inaction, or that they can have construed it to imply acquiescence in his discharge. No matter how early the relator might have commenced this proceeding, it is quite certain that he would not have been reinstated before the final decision of the court of appeals on February 28, 1899, so that the city has lost nothing by his delay. The affidavits show that the relator, who had held a position similar to that of Baillie, and was removed on the same day, had kept himself fully informed as to the progress of the Baillie Case, and within a reasonable time after the decision of the court of appeals commenced the present proceeding. If the relator had waited until four months after the final decision of the court of appeals, a different question would have presented itself. As it is, however, he proceeded with all reasonable promptness after the test case had been determined in his favor. Under all the circumstances, his delay cannot be said to have indicated acquiescence in his removal, nor is it alleged that the defendant has been induced by the delay to take any action which he would not otherwise have taken; hence no question of estoppel arises. Within a week after the appellate division has declared that the act of 1898 did not apply to the city of New York, the relator was removed. That exposition of the law remained unreversed until the decision of the court of appeals in the Fleming Case in February, 1899. There is no suggestion in the affidavits, and no reason to suppose, that any application for reinstatement would during that time have been even considered by the defendant. On the whole, I think that the relator has sufficiently and satisfactorily accounted for his delay in commencing this proceeding, and that he had been guilty of no laches which should lead the court to refuse to reverse his admittedly unlawful removal. The motion for a writ of peremptory mandamus must therefore be granted, with $25 costs.

Motion granted, with $25 costs.