(28 Misc. Rep. 401.)

## PEOPLE ex rel. MEHEGAN v. SCANNELL.

(Supreme Court, Special Term, New York County. July, 1899.)

1. MUNICIPAL CORPORATIONS—GREATER NEW YORK—CIVIL SERVICE—MODIFICATION OF REGULATIONS.

Under Laws 1883, c. 354, as amended by Laws 1898, c. 186, forbidding appointments and promotions in the civil service after three months from the passage of the act, except in conformity with civil service regulations, and providing that "all regulations now existing for the appointment and promotion in the civil service * * * and any subsequent modifications thereof shall take effect only upon the approval * * * of the New York civil service commission," a modification of the civil service regulations of New York City without the approval of the state civil service commission was void, although made within three months of the passage of the amendatory act.

2. SAME—FIRE DEPARTMENT—HEARING BEFORE DISCHARGE.

A driver of the fire department of New York City, holding a position subject to competitive examination under the civil service regulations of that city, before he is discharged is entitled to have the reasons therefor stated in writing and filed, and an opportunity to make an explanation, as required by the general civil service law (Laws 1883, c. 354), as amended by Laws 1898, c. 186.

8. SAME—MANDAMUS—LACHES.
 A municipal employé discharged in violation of the general civil service
 law (Laws 1883, c. 354), as amended by Laws 1898, c. 186, is entitled to be
 restored to his position by a writ of mandamus, although he allowed 10
 months to elapse before applying for relief.

Application by the people, on the relation of John J. Mehegan, for a peremptory writ of mandamus against John J. Scannell, fire commissioner of the city of New York.    Granted.

Julius M. Mayer and Samuel H. Ordway, for relator.

John Whalen, Corp. Counsel (Theodore Connoly, of counsel), for respondent.

BEEKMAN, J.   On May 14, 1896, the relator was duly appointed, after a competitive examination, to the position of driver in the fire department of the city of New York.   When the Greater New York charter (chapter 378, Laws 1897) went into effect on January 1, 1898, he still held that position, and, upon the reorganization of the department, which then ensued, he was duly assigned to the same place, with the same duties and compensation.   The charter provided for the appointment of municipal civil service commissioners, who were empowered to prescribe and amend, subject to the mayor's approval, and to enforce regulations for appointments to, and promotions in, the civil service of the city, and "for classifications and examinations therein."   Sections 123–125.   Such commissioners having been appointed, certain regulations and classifications relating to such civil service were prescribed by them, which went into effect, by the approval of the mayor, on March 5, 1898.   The position held by the relator was classified as one subject to competitive examination.   On March 31, 1898, an act was passed by the legislature (chapter 186, Laws 1898) entitled "An act to amend chapter 354 of the Laws of 1883, entitled 'An act to regulate and improve the civil service of the state of New York,'" which required the mayor of each city in this state to appoint and employ suitable persons to prescribe, amend, and enforce regulations for appointments to and promotions in the civil service of such city, "and for classifications and examinations therein."   A classification of persons employed in the public service of such city was directed to be made within two months after the passage of the act, and after three months from its passage appointments and promotions in the civil service were forbidden, except in conformity with such regulations.   It was further required that "such regulations herein prescribed and established, and all regulations now existing for appointment and promotion in the civil service of said city, and any subsequent modification thereof, shall take effect only upon the approval of the mayor of the city and of the New York civil service commission."   The act in question also provided (section 13) that, "if a person holding a position subject to competitive examination in the civil service of the state or of a city shall be removed or reduced, the reasons therefor shall be stated in writing and filed with the head of the department or other appointing officer, and the person so removed or reduced shall have an opportunity to make an explanation."   This being the condition of the law, the municipal

civil service commissioners of the city of New York prescribed certain amendments and modifications of the regulations of March 5, 1898, which were approved by the mayor of this city on May 19, 1898, under which the position held by the relator was reclassified as a noncompetitive one.   The changes thus attempted to be made have never been approved by the state commission.   On July 1, 1898, the relator was removed from his place summarily, and without regard to the provisions of section 13 of the act of 1898, above quoted.   No charges were made against him, no reasons for his removal were stated in writing and filed with the head of the department in which he was employed, nor, it is needless to say under such circumstances, was he accorded an opportunity to make an explanation.   He now asks the court for a writ of mandamus restoring him to his position, on the ground that he was unlawfully removed, in violation of the section of the act of 1898 above mentioned.   At the time of such removal it had been held by the appellate division in this department (People v. Keller, 31 App. Div. 248, 52 N. Y. Supp. 950), for reasons which need not be considered here, that the act of 1898 did not apply to the city of New York.   If that view of the law had been sustained by the court of appeals, the relator certainly would have had no grievance, and the lawfulness of his removal would have been free from doubt or question.   But it has not been, and it is now finally settled that the act in question does apply to the city of New York, and that, in so far as any of the provisions of the new charter may conflict with it, they must be deemed to be repealed by implication.   People v. Dalton, 158 N. Y. 175, 181, 182, 52 N. E. 1113; People v. Keller, 158 N. Y. 187, 52 N. E. 1107.   It is urged, however, that upon a proper construction of the act the local civil service commissioners had the right to change the classification of relator's position from the competitive to the noncompetitive class, as they attempted to do, with the concurrence of the mayor, on May 19, 1898, and that the approval of the state commission was not necessary to give legal effect to their action.   It is contended that the intent of the act of 1898 was that the amended section 8 of the act of 1883 should not take effect until three months from the date of its enactment, and that in the meanwhile the local civil service commissioners might, with the approval of the mayor only, and acting solely under the charter, make such changes in existing regulations as they might deem proper, without regard to the state commission.   I am quite clear that the statute will not bear any such construction.   The manifest intention of the legislature was to secure a local administration of the civil service laws of the state which should be in harmony with the purposes which they were intended to accomplish.   In the absence of any central control over the matter, it is plain that, among the many cities of the state to which the law was applicable, there would be differences in the regulations established by the local authorities, arising out of either hostility to the policy of the law or varying constructions of its true intent and purpose.   By the constitution of the state (article 5, § 9) it is declared that "appointments and promotions in the civil service of the state, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness, to be ascer-

tained, so far as practicable, by examinations, which, so far as practicable, shall be competitive," and the legislature was required to make laws to provide for the enforcement of the section.    Nothing could be more reasonable—indeed, it might be said, more essential to the successful execution of the policy of the state thus imbedded in its fundamental law—than a requirement, such as the act of 1898 contains, subjecting the administration of the law to a measure of central supervision and control.    But there is no novelty in the provision.    When, by chapter 410 of the Laws of 1884, the act of 1883 (chapter 354) was amended, making the establishment of regulations for the admission of persons into the civil service of a city obligatory upon the mayor, it was required that such regulations and any subsequent modification thereof should take effect "upon the approval of the New York civil service commission"; and this continued applicable to the city of New York, except during the short period of three months immediately preceding the adoption of the act of 1898, while the charter provisions on the subject were in force.    With this single departure from the principle, so speedily corrected, it has always been the policy of the state that there should be at least this measure of control over the local administration of the civil service law.    This being so, the moment the law of 1898 was enacted the city of New York resumed its place among the cities of the state which were subject to all of the provisions of the original law, and its rules and regulations again became, as they formerly had been, subject to the approval of the state commission.    Whatever under its provisions any other city of the state was required to do, in order to secure a change in its rules and regulations, the city of New York became bound to do, and if the former were under the necessity of securing the approval of the state commission to any such change in their regulations, as the same existed when the act of 1898 was passed, the city of New York was under the same obligation.    This, it seems to me, was the necessary result of a general law intended to bring all of the cities of the state, without exception, under a uniform system.    But can it be reasonably maintained that in the case of cities other than the city of New York the legislature intended that, during the period of three months after the act of 1898 was passed, such cities might change or modify their then-existing civil service regulations without securing the approval of the state commission, as they had always been obliged to do?    Plainly not.    In order, then, to support his claim, the respondent is driven to the necessity of maintaining that the repeal of the Greater New York charter provisions on the subject did not take effect until the expiration of the period fixed in the act within which the new regulations were to be finally adopted.    But this is obviously untenable. Apart from other considerations, there is such a lack of reasonable motive for such a provision that the court will not by construction impute any such intention to the legislature.    But it is obvious, upon the face of the statute, that duties were immediately imposed by the act upon the civil service commissioners of the city of New York which had to be performed within the three months referred to.    This consideration, together with the absence of any qualification or limit-

ation in favor of the city of New York in the repealing clause of the statute (section 4), which declares that "all acts or parts of acts inconsistent with the provisions of this act are hereby repealed," and the declaration of section 5, that the act should take effect immediately, effectually disposes of any claim that the charter provisions which were inconsistent with the act retained any vitality, so far as prospective existence and operation were concerned, for a moment after chapter 186 of the Laws of 1898 was passed. The statute contains this provision:

"Such regulations herein prescribed and established, and all regulations now existing for appointment and promotion in the civil service of said city and any subsequent modification thereof, shall take effect only upon the approval of the mayor of the city and of the New York civil service commission."

The learned counsel for the respondent argues, from the phrase "and any subsequent modification thereof," that the meaning of the legislature was that only modifications subsequent to the new rules and regulations contemplated by the act were meant, and that such, and such only, were required to be approved by the state commission. This construction is, I think, strained, and quite out of harmony with the general intent of the statute, as I have endeavored to explain it. Furthermore, the clause relied upon, so far as existing rules and regulations are concerned, is not a new enactment, but is found in the original section of the law of 1883, now amended by chapter 186, Laws 1898, in the following words:

"Such regulations hereafter prescribed and established, and any subsequent modification thereof, shall take effect upon the approval of the New York civil service commission."

Under this condition of the law, there is little room for any contention that the phrase under consideration was not intended to apply to rules in existence at the time of the enactment of the act of 1898, and continued by it. The whole spirit, purpose, and intent of the law was that after its enactment no change in such rules and regulations should be made, under any circumstances, without the concurrence of the state commission. The act has undergone a construction in the courts which is in harmony with the view I have expressed. People v. Dalton, 158 N. Y. 175, 52 N. E. 1113; People v. Keller, 158 N. Y. 187, 52 N. E. 1107. In the latter case Judge O'Brien says (page 201, 158 N. Y., and page 1112, 52 N. E.):

"It [the act in question] imposed a duty on the local authorities to modify the existing rules under which the various persons in the public service were classified, or to make new rules, and that neither the old rules as modified, or the new rules when made, should take effect until approved by the state civil service commission. The whole purpose of the statute was to set the local authorities again in motion, and require them to do their work over again by making another classification more satisfactory to the legislature. But in the meantime the civil service of the city was not remitted to chaos, since the rules and classifications of March 5th were in full force until superseded by the new or modified rules which the legislature evidently thought to be necessary."

It is apparent, then, that the attempt by the civil service commissioners of the city of New York, on May 19, 1898, to change the position of the relator from the competitive to the noncompetitive class

without obtaining the approval of the state civil service commission, was ineffectual and void; and as, at the time of his discharge, he held a place belonging to the competitive class, he could be lawfully removed only in conformity with section 13 of the civil service law, as amended by chapter 186 of the Laws of 1898. As there was no compliance therewith, the removal was without warrant of law. But it is contended that, assuming all this, the relator cannot secure redress by mandamus, because of laches in failing to apply for such relief until after the lapse of about 10 months subsequent to his removal. It is unnecessary for me to discuss this question, in view of the elaborate consideration which it has received from Mr. Justice Scott in his opinion in the case of People v. Scannell, 27 Misc. Rep. 662, 59 N. Y. Supp. 679, where he has held, upon facts which are also before me on this motion, that the plea of laches could not be sustained. I concur with him in this conclusion, as well as in the reasons therefor which he has given. It follows that the motion for a peremptory writ of mandamus must be granted, with $25 costs.

Motion granted, with $25 costs.