In re CITY OF NEW YORK.

In re NEW YORK CENT. R. CO.

(No. 7415.)

(Supreme Court, Appellate Division, First Department.　June 4, 1915.)

RAILROADS ☞102 — OVERHEAD BRIDGES AT CROSSINGS — DUTY TO REPAIR — STATUTORY PROVISIONS.

Bridges erected under Laws 1897, c. 645, authorizing the erection of bridges over tracks of a railroad company at streets designated, subsequent to Railroad Law (Laws 1897, c. 754) § 64, providing that, when a highway crosses a railroad by an overhead bridge, the framework of the bridge and its abutments must be maintained by the railroad company, and the roadway thereover and the approaches thereto must be kept in repair by the municipality, must be kept in repair as provided by chapter 754, continued in force, with amendments, by Laws 1902, c. 140, Laws 1909, c. 153, Railroad Law (Consol. Laws, c. 49) § 93, and Laws 1913, c. 744, since chapter 645 must be construed in harmony with the Railroad Law.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 306–314, 769; Dec. Dig. ☞102.]

Appeal from Special Term, New York County.

Mandamus by the City of New York against the New York Central Railroad Company to compel the company to repair the framework and abutments of bridges over the tracks of the New York Central Railroad Company located at Gerard avenue, Walton avenue, and River avenue. From an order granting a peremptory writ, the Railroad Company appeals. Affirmed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Alexander S. Lyman, of New York City (George H. Walker, of New York City, of counsel, and Crosby J. Beakes, of New York City, on the brief), for appellant.

Frank L. Polk, Corp. Counsel, of New York City (Samuel J. Rosensohn, of New York City, of counsel), for respondent.

CLARKE, J.　Chapter 645 of the Laws of 1897, which became a law May 22, 1897, by the approval of the Governor, authorized the commissioner of street improvements of the Twenty-Third and Twenty-Fourth wards of the city of New York, upon the consent and approval of the board of estimate and apportionment, to erect suitable bridges, with necessary abutments, over the tracks of the New York Central & Hudson River Railroad, one at Gerard avenue, one at Walton avenue, one at River avenue, and one over the tracks of the New York & Putnam Railroad at Ft. Independence street, in the city of New York, the cost of which should not exceed the sum of $150,000. It was further provided:

"Said bridges shall be always free for the passage of persons, animals, vehicles and traffic over and across the same to a like extent as such rights exist or may exist over and along other portions of said streets or avenues and when completed shall be kept and maintained in good order and repair by the said commissioner of street improvements."

On or about the 25th of July, 1899, the city of New York, acting by the commissioner of improvements of the Twenty-Third and Twenty-Fourth wards, upon the consent and approval of the board of estimate and apportionment, erected and constructed suitable bridges with necessary abutments over the tracks of the New York Central Railroad, one at Gerard avenue, one at Walton avenue, and one at River avenue. These bridges have been held by the city in trust for public use as its public streets, and constitute public highways over the railroad crossing at said points. The condition of the bridges is dangerous to the public, because the framework and abutments have weakened so as to render the bridges unsafe and a menace to the public using the highways and to the trains operated by said company underneath said bridges. On June 9, 1914, the city notified the railroad company that the bridges were in poor condition, and requested that steps be taken to have the repairs necessary to place these bridges in good condition made as soon as possible. On July 27, 1914, the city again notified the company that said bridges were in need of repair:

"You are accordingly required to place same in repair without delay, and in case of your failure to commence the repair work on said bridges within thirty (30) days from date, I shall proceed with same and charge the cost thereof to you."

On March 22, 1915, the company wrote the city:

"Your attention is hereby drawn to the dangerous condition of bridges carrying Gerard, River, and Walton avenues over the tracks of this company in the borough of the Bronx. The obligation to keep these bridges and the whole of them in repair is placed upon the city by chapter 645 of the Laws of 1897, to which your attention has been heretofore called. Our engineering department advises that the girders of these bridges have weakened to such an extent—especially those supporting the sidewalks—as to render the same unsafe and a menace to the trains operated upon our tracks underneath. I write, not only calling this situation to your attention, as I believe you are already aware of it, but to say that this company will hold the city liable for any damages that may result from the collapse of these bridges, or any part of the same, or injuries to our trains or passengers."

It is clear, therefore, that the said streets are highways, that they cross a railroad by overhead bridges, that the bridges are in an unsafe condition, and repairs are necessary. The railroad company claims that the obligation to repair is upon the city under the clause in chapter 645 of the Laws of 1897, supra, "and when completed shall be kept and maintained in good order and repair by the said commissioner of street improvements." The city claims that the obligation to repair is upon the railroad company under section 64 of chapter 754 of the Laws of 1897, which became a law by the approval of the Governor May 22, 1897, being an act to amend the Railroad Law, and the act amendatory thereto relative to grade crossings, and which provides as follows:

"When a highway crosses a railroad by an overhead bridge, the frame work of the bridge and its abutments shall be maintained and kept in repair by the railroad company, and the roadway thereover and the approaches thereto shall be maintained and kept in repair by the municipality in which the same are situated."

This section was amended by chapter 140 of the Laws of 1902, by adding after the words quoted supra:

"Except that in the case of any overhead bridge constructed prior to the enactment of sections 61 and 62 of this act, the roadway over and the approaches to which the railroad company was under obligation to maintain and repair, such obligations shall continue, provided the railroad company shall have at least ten days' notice of any defect in the roadway thereover and the approaches thereto, which notice must be given in writing by the commissioner of highways or other duly constituted authorities, and the railroad company shall not be liable by reason of any such defect unless it shall have failed to make repairs within ten days after the service of such notice upon it."

This section was amended by chapter 153 of the Laws of 1909, by changing the exception so as to read as follows:

"Except in the case of any overhead bridge constructed prior to the first day of July, 1897."

Said section was re-enacted as section 93 of the Railroad Law (chapter 481, Laws of 1910; chapter 49, Consol. Laws), and was again re-enacted as section 93 by chapter 744 of the Laws of 1913.

A pure question of law having thus arisen, the interested parties have presented it by this application for a peremptory writ of mandamus, and no question is raised as to the propriety of the remedy. The appellant claims that the local statute was not repealed by the general statute approved on the same day, although bearing a number subsequent to the former, or by any of the acts amendatory thereto, and is still in full force and effect, and puts the burden of the repair of these bridges upon the city.

In City of Yonkers v. N. Y. C. & H. R. R. R. Co., 165 N. Y. 142, 58 N. E. 877, the court said:

"The question to be determined is whether section 64 of the Railroad Law (chapter 754 of the Laws of 1897) is applicable to the bridge over the defendant's tracks at Vark street, in the city of Yonkers, and is controlling upon the duties and obligations of the respective parties hereto in regard to that bridge. * * * In the year 1874 the plaintiff caused or permitted the street to be constructed across the defendant's railroad by a bridge, * * * and it appears that the bridge has since been maintained by the city, or by private individuals under permission from the city, as a part of the city streets and is used by both vehicles and persons traveling on foot. It is conceded that the bridge now needs repairs for the safety or convenience of the traveling public, and that since the construction of the same over the railroad chapter 754 of the Laws of 1897 * * * was enacted and is now the law which governs the respective rights and duties of the parties to this action with respect to the repair and maintenance of the bridge in question. * * * It is quite clear, however, that it [section 64] is not limited in its application to railroads constructed subsequent to its enactment or to bridges over crossings thereafter constructed. It was manifestly intended to apply to objects in existence at the time of its enactment, and consequently to all bridges constituting the highway at railroad crossings whether constructed after the law went into effect or before. The purpose of the statute was to insure greater safety at such highway crossings and that object could not be effected without applying the law to all such bridges existing at the time * * * it went into effect without regard to the date of their construction. The facts of the case bring it within both the letter and the spirit of the law. It is a case where a highway crosses a railroad by an overhead bridge, and the statute declares in plain language that the framework of the bridge and its abutments shall be maintained and kept in repair by the defendant, and that the roadway and

the approaches shall be kept in repair and maintained by the municipality. It is doubtless true that some provisions of the law, of which the provision quoted is but a part, were intended to apply only to railroads thereafter constructed, but with respect to the bridge in question the duty of the defendant to maintain the framework and the abutments attached immediately upon the enactment of the law, and since that duty has not been performed the plaintiff was entitled to the relief granted by the judgment."

The bridges in the matter at bar were constructed subsequent to the enactment of the statute requiring the railroad to repair. It is our opinion that section 64, c. 754, of the Laws of 1897, continued with certain immaterial amendments through the several statutes indicated, expressed the settled general policy of the state to secure the convenience and safety of the public where highways are carried by bridges over railroad tracks. The statute authorizing the construction of the bridges by the city, and providing that when completed they shall be kept and maintained in good order and repair by the said commissioner of street improvements, is to be construed in harmony with the Railroad law, which became a law upon the same date, and meant that said official was charged with the supervision and maintenance of the roadway thereover and the approaches thereto as provided in the Railroad Law; but said law, speaking as of the same time, also provided that the framework of the bridge and its abutments should be maintained and kept in repair by the railroad company. It is not reasonable to suppose that the Legislature, embarking upon a general state policy covering all the railroads and highways of the state, should have intended to except three small local bridges in this city. It is not necessary to hold that the subsequent acts impliedly repealed this provision of the act of chapter 645; but, if so, we would have no hesitation in so declaring. In People ex rel. Fleming v. Dalton, 158 N. Y. 175, 52 N. E. 1113, the court said:

"We are of opinion that the legislative intention is clearly manifested to make this act general and applicable to the entire state. 'A general statute will repeal special or local acts, without expressly naming them, where they are inconsistent with it, and where it can be seen from the whole enactment that it was the intention of the Legislature to sweep away all local peculiarities thus sanctioned by special acts, and to establish one uniform system.' Black on Interpretation of Laws, § 153. 'There is no rule of law which prohibits the repeal of a special act by a general one, nor is there any principle forbidding such repeal without the use of words declarative of that intent. The question is always one of intention, and the purpose of abrogating a particular enactment by a later general statute is sufficiently manifested when the provisions cannot stand together.' "

In Peterson v. Martino, 210 N. Y. 412, 104 N. E. 916, the court said:

"It is also the law that a statute, applicable to a particular class of cases, is not repealed by a general statute, broad enough in terms to embrace the cases covered by the special law, unless the intent to work a repeal is manifest. * * * Such an intent, however, must commonly be held to be manifest where the later statute is intended as a revision or codification of earlier enactments. * * * In such cases the very purpose of the later legislation is to substitute uniformity for diversity. This fundamental purpose will be upheld, even though the earlier statutes are not mentioned in the schedule of laws repealed."

In our opinion the duty is placed by law upon the appellant railroad to maintain and keep in repair the framework of the bridge and its abutments.

The order appealed from is therefore affirmed, with $10 costs and disbursements. All concur.