In the Matter of the Application of FRED A. HEALEY, Petitioner, Appellant, against JOHN BAZINET, Mayor, and JAMES F. HAYES and Others, Constituting the Board of Public Safety of the City of Glens Falls, Respondents.*

Third Department, July 1, 1942.

*Frank Hurley*, for the appellant.

*Harry H. Singleton*, for the respondents.

HILL, P. J. Petitioner-appellant seeks reinstatement as a police officer of the city of Glens Falls, N. Y. He took an examination April 26, was certified as eligible by the civil service commission June 7, appointed to the force as a special policeman August 5, 1935, and continued to serve until November 11, 1941, when he was removed by a resolution of the board of public safety. At the time of his examination and appointment, the charter of the city limited the force to one regular policeman for each fifteen

* Revg. 177 Misc. 829.

hundred inhabitants, but permitted the board of public safety to appoint special policemen who possessed the powers and were required to discharge the duties of regular policemen. Special policemen, according to the charter, were removable at the pleasure of the board.

The Constitution of the State requires that appointments and promotions in the civil service of the State and of all the civil divisions thereof shall be made according to merit and fitness, and directs that the Legislature shall enact laws " to provide for the enforcement of this section." (State Const. art. 5, § 6.) It was the purpose of the Constitution and the intent of the Legislature that there should be but one Civil Service Law in the State. (*People ex rel. Fleming* v. *Dalton*, 158 N. Y. 175.) It was made the duty of the officers of the State and of all civil subdivisions thereof to conform to and comply with the provisions of the law and any person employed contrary to its provisions or the rules and regulations adopted thereunder was not to be paid from the public treasury but by the officer or officers who made the irregular appointment. (Civ. Serv. Law, § 8.) Appointments are first made for a probationary term of three months. The retention of the appointee after such period is equivalent to a permanent appointment. (Rules for the Classified Civil Service, rule XII.) Petitioner took and passed an examination called by the civil service commission of the city of Glens Falls and was regularly appointed at the time earlier mentioned. The corporation counsel of the city corresponded with the secretary of the State Civil Service Commission, stating that the city " wishes to change the status of these twelve special policemen [petitioner was one of these] to that of permanent policemen " and expressed doubt that this could be done under section 14 of the law. The secretary replied, " It is my opinion that the special officers who were appointed as indicated and have served continuously, have full civil service status so far as the Civil Service Law and the local Civil Service rules are concerned and that they may be included in the permanent force without further examination whenever your Charter provision permits larger number to be designated as permanent officers." This was later confirmed as the opinion of the Civil Service Commission. Thereafter the board of public safety transferred nine of the special policemen to the regular force without examination or application by these officers, upon the assumption that the examination which they took, together with their appointment and service as special policemen, gave them such status under civil service as to justify this change. The board thereby adopted the construction given by the State Civil Service Commission, but only as to nine officers,

and rejected it as to petitioner by removing him from the force without notice or the preferment of charges, although his appointment as a special policeman antedates that of any of the nine appointed, one by a few months, the others by one or more years. It must be concluded either that the favored nine lacked civil service status qualifying them for appointment as regular policemen, and that, therefore, their appointments are illegal, or that petitioner has such status that he may be separated from the city service only in the manner provided by law as to an officer having civil service status, and not by the adoption of a resolution of the board, without notice or hearing.

At the time of petitioner's original appointment, it was the obvious intention of the city authorities to place him and other special officers upon the regular force so nearly as that could be accomplished under the charter limitation as to number. Had there been a vacancy on the regular force, his appointment thereto would have been probationary which in time would have become permanent. When vacancies occurred through the amendment of the charter and the increase of the number of regular policemen, petitioner became a member of the force, and he could be removed only in the manner prescribed by the State Civil Service Law (§ 22).

The answer pleads that no examination was held for the position of " special policeman." It is not denied that petitioner passed the examination for appointment to the police force on June 7, 1935. The appointments as " special " policemen were to evade the limitation of the charter and he, like the nine favored ones, was appointed to the regular force, as was recognized concerning the latter.

The orders should be reversed on the law, with fifty dollars costs and disbursements, the prayer of the petition granted, petitioner reinstated, with payment of his salary from the time of the attempted separation from the service. There is no material issue of fact.

BLISS, HEFFERNAN and FOSTER, JJ., concur; CRAPSER, J., dissents, in an opinion, and votes to affirm the orders appealed from.

CRAPSER, J. (dissenting). The petitioner appeals from two orders made at Special Term denying his application for an order directing his reinstatement as police patrolman of the city of Glens Falls, Warren county, N. Y.

Section 66 of the charter of the city of Glens Falls, being contained in chapter 29 of the Laws of 1908, reads as follows:

" § 66. Appointment of police force. For the purpose of providing a permanent and effective police force, it shall be the duty of said board of public safety, as soon after their appointment as possible, to select from the electors of the city, and appoint by warrant of appointment bearing the signatures of a majority of said commissioners, and to be immediately filed with the city clerk, as many permanent policemen as they may deem necessary, not to exceed one for each fifteen hundred inhabitants of said city, as shown by the last preceding State or national enumeration of the corporation of Glens Falls, except as hereinafter otherwise specified, and as vacancies occur to fill the same in the same manner. And said board shall from said number of policemen appoint a chief of police through whom said board may promulgate rules, regulations and orders to the police force, and who shall have the immediate direction and control of said force; subject, however, at all times to the rules, regulations and orders of said board or of its president as authorized by the board, and such chief of police and policemen appointed in the manner aforesaid, may hold his respective office during good behavior or until he becomes incapacitated or until the board shall decide such chief of police or policeman has become incompetent and inefficient and cause his removal after due trial as herein provided."

Section 75 reads as follows:

" § 75. Power to appoint special police. The board of public safety shall also have power to appoint special policemen, who shall hold their office by virtue of such appointment for such period as such board shall direct, and shall be subject to the provisions of this act, and may be removed at the pleasure of said board. Such special policemen shall forthwith take the oath of office, and shall thereupon become vested with all powers and shall discharge all the duties of policemen under this act and the statutes of this State, subject to such limitations and restrictions as said board shall fix and prescribe; such special policemen shall receive such fees and compensation as may be allowed to them by said board of public safety, or as otherwise hereinbefore provided."

It appears that there has never been prepared a certified eligible list containing the names of persons eligible for appointment to the office of special policeman of the city of Glens Falls.

The qualifications established by the civil service commission of the city of Glens Falls relative to the police department were and are qualifications for the appointment to the regular or permanent police force. All examinations held by the said commission relative to the police department were examinations for the position of regular or permanent policemen. All eligible lists

prepared by the civil service commission relative to the police force contained the names of persons eligible for appointment to the regular or permanent police force.

There was held on the 26th of April, 1935, by the municipal civil service commission an examination for policemen, firemen and police sergeant, and the petitioner took said examination. On June 7, 1935, there was certified to the board of public safety an eligible list for the appointment to the police bureau of the department, " the following named persons are eligible to appointment, having had a passing rate of 75% or more upon examination." Then followed a list of thirteen names and then a clause which read as follows: " It should be noted that the foregoing constitutes an eligible list and not the certification to you of names for appointment to the permanent force." The petitioner's name was ninth on the foregoing list.

On the 2d day of August, 1935, at a regular meeting of the board of public safety, the following occurred:

" Resolved that Fred A. Healey be and hereby is appointed special policeman upon filing a $1000 bond, his compensation to begin as of July 26th when he started to work, he to act during the pleasure of the Board."

He made an application for appointment as special policeman. It is to be assumed that he knew the difference between the special policemen and the regular policemen as provided by the charter. He continued to act as a special policeman from the time of his appointment until the 11th of November, 1941, when, on December 15, 1941, the following resolution was adopted:

" Resolved that Fred A. Healey be and he hereby is discharged and removed from the position of special policeman of the City of Glens Falls and that said discharge and removal be effective as of the 11th day of November, 1941."

It is claimed by the petitioner that he was serving as patrolman and that such position or employment was within his scope of civil service as it applied to the city of Glens Falls and that the eligible list applies to the position held by him so that he could not be dismissed and that his status entitled him to a continuous service under the civil service.

It appears from the record that there was never any eligible list for the special policemen and that special policemen were clearly differentiated from the permanent force by the provisions of the charter and the written application of the petitioner for his appointment shows that he possessed this knowledge. No matter what his duties were, the position that he occupied was not in the competitive class of the civil service.

It is urged by the petitioner that the city civil service commission by conducting the examination and certifying to the board of public safety the names of those on the eligible list intended to include all classes of policemen; it does not seem that that was their intention because there is proof in the record of the definite exclusion of special policemen.

The city of Glens Falls is evidently overhauling its police system, as it has a right to do, and it had a right to discharge and dismiss the petitioner because it was with that distinct understanding that he was first accepted, and there is nothing in the record to indicate that he was in any way deceived.

The orders appealed from should be affirmed, without costs.

Orders reversed on the law, with fifty dollars costs and disbursements, prayer of the petition granted and petitioner reinstated, with payment of salary from the time of the attempted separation from the service.